IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

NOELLE ROSELYN AIPPERSPACH, as )
Personal Representative of the Estate of )
MAHIR S. AL-HAKIM, deceased, )
 )
          Plaintiff, )
 )
    v. )   Case No. 11-01225-CV-W-DGK
 )
PATRICK MCINERNEY, et al., )
 )
          Defendants. )

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In the present lawsuit, Plaintiff Aipperspach,[1] the Personal Representative of Mahir Al-Hakim's ("Al-Hakim") Estate, alleges that Al-Hakim was subjected to excessive force when he was shot and killed by law enforcement officers on March 18, 2010 in Riverside, Missouri. Currently pending before the Court are summary judgment motions on behalf of the Riverside Defendants[2] (Docs. 164 and 165) and Defendants Kansas City Board of Police Commissioners[3] ("KCBOPC") and Officer Robbie McClaughlan (Doc. 171).[4] Also pending is Plaintiff's "Motion to File a Supplement to Her Suggestions in Opposition to Defendants' Motions for Summary Judgment, to Further Comply with Local Rule 56.01(a) (Doc. 182)[5] and the Riverside Defendants' "Motion to Exclude the Testimony of Plaintiff's Designated Expert Brian Frist, M.D." (Docs. 167, 168)[6] and "Motion to Exclude the Testimony of Plaintiff's Designated Expert D.P. Van Blaricom (Docs. 169

---

[1] Plaintiff Aipperspach is the sister of decedent Al-Hakim.
[2] The Riverside Defendants are the City of Riverside, Missouri; Police Chief Gregory Mills; Sergeant Trevor Ballard; and Officer Matthew Westrich.
[3] The Kansas City Board of Police Commissioners is represented through its members, Patrick McInerney, Lisa Pelofsky, Angela Wasson-Hunt, Alvin Brooks, and Sylvester James, who are each sued in their official capacities.
[4] The Court has also considered Docs. 177, 178, and 181.
[5] The Court has also considered Docs. 183, 184, and 185.
[6] The Court has also considered Docs. 174 and 179.

and 170).[7]

Because there is no genuine issue of material fact, the motions for summary judgment on behalf of the Riverside Defendants and the KCBOPC and Officer McLaughlan (collectively "the Defendants") are GRANTED.

**Background**

**I. The Court grants Plaintiff's motion to supplement her suggestions in opposition.**

As a preliminary matter, the Court grants Plaintiff's motion to supplement her suggestions in opposition to the Defendants' motions for summary judgment. Local Rule 56.1(a) provides in pertinent part that "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." Plaintiff filed one response to Defendants' two motions for summary judgment. In this combined response, Plaintiff did not comply with Rule 56.1(a), making it difficult for Defendants and the Court to determine which facts were controverted and which were not.

To rectify this error, Plaintiff filed a motion to supplement her suggestions in opposition to controvert specific paragraphs of Defendants' statements of facts. Rather than deem the entirety of Defendants' statement of facts admitted because of Plaintiff's failure to comply with the Local Rules, the Court grants Plaintiff's motion to supplement (Doc. 182). However, where Plaintiff has not controverted Defendants' statements of facts with reference to specific paragraph numbers, the Court deems Defendants' facts admitted. Additionally, where Plaintiff interjects information into her argument not set forth in her statement of uncontroverted facts, the Court disregards such

---

[7] The Court has also considered Docs. 173 and 180.

2

Case 4:11-cv-01225-DGK   Document 186   Filed 08/02/13   Page 2 of 15

information.[8]

## II. Statement of Facts[9]

The following facts are undisputed unless otherwise noted.[10]

### A. The Day of the Shooting

On March 18, 2010, William Hart ("Hart") made a 911 call to the Riverside Missouri Police Department indicating that his friend, Mahir Al-Hakim, refused to leave Hart's apartment. Detective Billy Aaron and Captain Michael Costanzo arrived at Hart's apartment in response to this call. Upon arrival, Hart told Detective Aaron that Al-Hakim had come to his apartment asking to borrow money. Hart informed Detective Aaron and Captain Costanzo that Al-Hakim had left shortly before their arrival and had started walking to the wooded area west of his apartment. Hart never informed Detective Aaron or Captain Costanzo that Al-Hakim was armed.

After speaking with Hart, and while Detective Aaron and Captain Costanzo were still outside Hart's apartment, Defendants allege that the Riverside Police Dispatch informed them there was an outstanding warrant for Al-Hakim's arrest.[11] They then began looking for Al-Hakim in the wooded area behind Hart's apartment. Riverside Police Sergeant Dennis Jones arrived soon after and also began looking for Al-Hakim in the woods.

Sergeant Jones found Al-Hakim sitting in a ravine to the west of Hart's apartment. Sergeant Jones identified himself multiple times as a Riverside police officer and asked Al-Hakim to come up

---

[8] For example, Plaintiff argues that Defendant McLaughlan was the only person who aimed at and shot Al-Hakim in the head while the other four officers managed to shoot Al-Hakim in his trigger hand, disarming him without killing him (Doc. 177, at 16). However, this information was never set forth in Defendants' or Plaintiff's statements of facts. Therefore, the Court disregards this argument for purposes of this motion.
[9] These facts are drawn heavily from the Defendants' motions for summary judgment.
[10] The Court includes the word "alleged" whenever there are contested facts.
[11] Although Plaintiff controverts the existence of an arrest warrant, she does not controvert that the Riverside police *believed* there was an arrest warrant based on the information they received from the Riverside Police Dispatch.

3

the hill and talk with him.  Al-Hakim refused and produced what Defendants allege appeared to be a handgun held against his jaw.  Sergeant Jones dropped his radio, pulled his own gun, and told Al-Hakim in a loud voice to drop the gun.  Detective Aaron and Captain Costanzo heard Sergeant Jones yell "drop the gun," and responded to Jones' location.  Detective Aaron then went down the hill to stand next to Sergeant Jones.  Detective Aaron also identified himself as a Riverside police officer and told Al-Hakim to drop his gun.  Captain Costanzo immediately radioed that an officer needed assistance with an armed party.

Hearing Captain Costanzo's request for assistance, Riverside Police Officer Matthew Westrich and Riverside Police Sergeant Trevor Ballard left the scene of a fatality accident and traveled to the wooded area.  Upon arrival, Officer Westrich took a seated firing position with his department shotgun in the area above Al-Hakim.  Captain Costanzo instructed Sergeant Ballard to provide cover with his patrol rifle for Sergeant Jones and Detective Aaron because Ballard was wearing a ballistic vest and Jones and Aaron were in plainclothes without vests.  Sergeant Ballard complied and took a position next to Sergeant Jones and Detective Aaron nearest Al-Hakim, aiming at Al-Hakim with his rifle sight.

Several officers from neighboring police departments, including Kansas City Police Department ("KCPD") Officers Robbie McLaughlan, Chris Stammler, J.D. Petty, Pete Schultz; KCPD Sergeant Phil Smith; Platte County Deputy Daniel Fred Green; Gladstone Officer Christopher Morales; North Kansas City Officer Kyle Pansing; and Platte Woods Officer William Babbitt, also responded to Captain Costanzo's request for assistance.

Upon arrival, Officer McLaughlan grabbed his patrol rifle, and he and the other officers walked to the embankment near the woods where they saw Al-Hakim sitting at the bottom of the

4

ravine, holding a gun to his neck. Defendants allege that Al-Hakim's gun looked like a .45 Hi-Power pistol to Officer McLaughlan, a semi-automatic handgun to the Riverside Defendants, and a real gun to the other officers. In reality, Al-Hakim was holding a Daisy 08 BB/pellet gun, whose packaging was lying nearby.[12] Officer McLaughlan positioned himself behind a small tree facing Al-Hakim. The tree width did not cover Officer McLaughlan's entire body.

At that point, officers began telling Al-Hakim to put down his gun. Sergeant Jones pleaded with Al-Hakim, requesting several times that he relinquish his weapon. Sergeant Jones also offered to lower his firearm if Al-Hakim would drop his gun. Defendants allege that at one point Al-Hakim started to point his gun away from his head and in the general direction of Sergeant Jones, and Jones told Al-Hakim to not point the gun at him again or he would shoot him.

Officer Morales also attempted to get Al-Hakim to set down his gun. Recognizing him from past dealings, Officer Morales used Al-Hakim's first name when he told him, "Mahir, put the gun down." Officer Morales also told him, "No one's here to hurt you. Help us out. Put the gun down."

Officer Westrich saw Al-Hakim shake his head from side to side, indicating "no," in response to the officers' commands for him to put down his gun. Al-Hakim did not comply with the officers' repeated requests, which were recorded on the audio portion of Officer Morales' patrol car video. A recording from the Channel 41 news helicopter captured the incident on video.

At some point, Al-Hakim attempted to stand or adjust his seating position but fell backwards. As he pulled himself up to a seated position, Defendants allege that he pointed his gun in firing position at Officer McLaughlan and the other officers above him. Defendants also allege that Sergeant Ballard, Officer Westrich, Officer McLaughlan, and Sergeant Jones believed the officers

---

[12] The parties dispute whether the gun's packaging was visible or lying under brush at the time of the shooting.

5

above Al-Hakim were in danger of serious bodily injury or death. Officer McLaughlan specifically testified that he felt an immediate threat to his life and the lives of the other officers.

Within seconds of Al-Hakim allegedly pointing his gun at the officers, Officer McLaughlan discharged his rifle at Al-Hakim one time. Officers Morales, Pansing, Westrich, Green, Ballard, and Babbit also fired their weapons at him. The shots fatally wounded Al-Hakim. The sound of the officers firing their weapons was recorded on Officer Morales' patrol car video/audio. The sound lasted approximately four seconds. The KCPD SWAT team and negotiators were on their way to the scene when Al-Hakim was shot and killed.

Officers Pettey, Shultz, and Stammler, Sergeants Smith and Jones, and Detective Aaron, did not discharge their weapons. Defendants allege that these individuals did not fire for various reasons, including: (1) they were not able to see Al-Hakim raise his gun from where they were standing; (2) they did not have their weapons in a firing position;[13] and (3) they would have been shooting in the direction of other officers.

### B. Riverside Police Department's Policy on Use of Force

The Riverside Police Department's policy on force, including lethal or deadly force, is found in Riverside, Missouri Department of Public Safety PROCEDURAL INSTRUCTION No. 10-01"USE OF FORCE," and provides in pertinent part:

> "B. Guidelines for LETHAL (DEADLY) FORCE:
>
> A law enforcement officer in effecting an arrest or in preventing an escape from custody is justified in using deadly force only:
>
> 1. When he reasonably believes that such use of deadly force is

---

[13] Sergeant Jones, for example, testified that he saw Al-Hakim point his gun at the officers and perceived it "absolutely as a threat" but did not fire at Al-Hakim because he had lowered his gun while he was trying to negotiate with Al-Hakim and could not get into firing position before the shooting was over.

>immediately necessary to effect the arrest and also reasonably believes that the person to be arrested
>
>a. Has committed or attempted to commit a dangerous felony; or
>b. Is attempting to escape by use of deadly weapon; or
>c. May otherwise endanger life or inflict serious physical injury unless arrested without delay...."

### C. Officers' Training

Officer Westrich graduated from the Missouri Western State College Regional Law Enforcement Academy in 1998 and has been trained on and regularly reviews the "Riverside Department of Public Safety Procedural Instruction on the Use of Force."

Sergeant Trevor graduated from the Missouri Western State College Regional Law Enforcement Academy in 2002 and has received training on the "Riverside Department of Public Safety Procedural Instruction on the Use of Force."

Officer McLaughlan has worked for the KCPD for approximately six years. Prior to the KCPD, Officer McLaughlan was in the United States Army for twenty-two years, with the first five years as a military police officer and the remaining seventeen years in Special Forces. Officer McLaughlan is a licensed officer in Missouri. In 2006, Officer McLaughlan completed 1,072 hours of training from the Regional Police Academy. Since graduating the Academy, Officer McLaughlan has completed several hours of annual training on defensive tactics and firearms, specifically patrol rifles.

### Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

7

56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

**I. The Court grants summary judgment to Officer McLaughlan, Sergeant Ballard, and Officer Westrich on Plaintiff's section 1983 claims under Counts 1, 3, and 4 because their use of deadly force did not violate Al-Hakim's constitutional rights and was objectively reasonable under the circumstances.**

In Counts 1, 3, and 4, Plaintiff alleges that Defendants McLaughlan's, Ballard's, and Westrich's use of excessive force violated 42 U.S.C. § 1983.

As a preliminary matter, the Court notes that Defendants argue that Plaintiff cannot bring section 1983 claims against Officer McLaughlan, Sergeant Ballard, and Officer Westrich because Plaintiff has sued them in an official, not personal capacity. *See Ivester v. Lee*, 991 F. Supp. 1113, 1121 (E.D. Mo. 1998) (citing Supreme Court precedent stating that individuals sued in their official capacity are not persons for purposes of section 1983) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Roberts v. Dillon*, 15 F.3d 113, 115 (8th

8

Cir. 1994) ("An official-capacity suit is merely another way of pleading an action directly against the public entity.").

The Court agrees that Plaintiff's complaint has not clearly alleged that the section 1983 claims are brought against each of the Defendants in their personal, as well as official capacity. On Page 22, paragraph 84 of Plaintiff's complaint, where Plaintiff lists the parties against whom the action is brought, Plaintiff states "[e]ach of the acts and/or omissions alleged herein against Defendant McLaughlan were committed by him individually, or his agents, servants, and/or employees, while acting under the color of law with approval and knowledge of his superiors." Plaintiff uses identical language for Defendants Ballard and Westrich at paragraphs 98 and 99. Plaintiff claims that this language is sufficient to establish that she brings the section 1983 claims against Defendants in their personal capacity. However, in the counts alleging section 1983 violations against Defendants McLaughlan, Ballard, and Westrich (Counts 1, 3, and 4), Plaintiff explicitly states that the claims are brought against Defendants in their "official capacity as members of law enforcement."

Because the Court can dismiss Plaintiff's section 1983 claims against Defendants McLaughlan, Ballard, and Westrich for substantive rather than procedural reasons, however, the Court does so here.

### A. Officer McLaughlan, Sergeant Ballard, and Officer Westrich are entitled to Qualified Immunity because their use of deadly force was objectively reasonable.

The standard for qualified immunity is well settled:

> "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Evaluating a claim of qualified immunity requires a 'two-step inquiry: (1) whether the facts shown by the plaintiff make

9

> out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct.'"

*Estate of Morgan v. Cook*, 686 F.3d 494, 496-97 (8th Cir. 2012) (citing *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009) (citations omitted).

In claims involving the use of excessive force, the first inquiry is whether the force amounts to a violation of the Fourth Amendment's prohibition against unreasonable seizures. *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012); *Molina-Gomes v. Welinski*, 676 F.3d 1149, 1152 (8th Cir. 2012). In making that determination, the court examines "whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation." *Loch*, 689 F.3d at 965 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The court "must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest." *Id*. (citing *Graham*, 490 U.S. at 396).

A court's analysis of whether the use of force was reasonable must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Molina-Gomes*, 676 F.3d at 1152 (citing *Graham*, 490 U.S. at 396-97). The court must judge the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Loch*, 689 F.3d at 965 (citing *Graham*, 490 U.S. at 396).

"The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Id*. (citing *Tennessee v.*

10

*Garner*, 471 U.S. 1, 11 (1985)); *see also Estate of Morgan*, 686 F.3d at 497 ("The use of deadly force is not constitutionally unreasonable if an officer has 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.'") (citing *Moore v. Indehar*, 514 F.3d 756 (8th Cir. 2008)).

Here, the undisputed facts establish that there was no violation of Al-Hakim's rights. The parties agree that Al-Hakim held a gun in his hand and that he refused police officers' repeated requests to put it down. Furthermore, although Plaintiff contends that there is a genuine issue of fact regarding whether the officers believed the gun was real and whether Plaintiff pointed the gun at the officers, Plaintiff presents no evidence sufficient to controvert these facts. Rather, Plaintiff presents pictures of the gun and a video of the incident taken from above the scene by a helicopter.

These pictures and videos, however, do not answer the question of whether the officers' actions were "objectively reasonable" from the perspective of those on the ground. Rather, the video provides only the aerial perspective of the person who recorded it. Moreover, the Court's viewing of the video over three years later is precisely the kind of hindsight judgment the Eighth Circuit and the United States Supreme Court have cautioned against.

As the Supreme Court has held, the court must judge the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Loch*, 689 F.3d at 965 (citing *Graham*, 490 U.S. at 396). Although Plaintiff argues that this rule has been made obsolete by the availability of video and photograph evidence, this argument is unpersuasive. The purpose of the rule is to protect officers in cases where they must make split-second life and death decisions. That technology now allows the Court to travel back in time to determine whether decisions were reasonable in hindsight does little to affect the reasonableness of

11

decisions in the moment. Accordingly, the video and picture evidence does nothing to controvert the testimony of numerous officers that they believed that Al-Hakim pointed a real firearm at officers, endangering their lives.

For these reasons, the Court holds there is no genuine issue of material fact that Officer McLaughlan, Sergeant Ballard, and Officer Westrich, in making a split-second judgment in a situation that was "tense, uncertain, and rapidly evolving," had probable cause to believe that Al-Hakim posed a threat of serious harm to them and others. Therefore, their actions in shooting him were objectively reasonable.

**B. Officer McLaughlan, Sergeant Ballard, and Officer Westrich had no obligation to retreat or use less than lethal force.**

Officer McLaughlan, Sergeant Ballard, and Officer Westrich were under no obligation to retreat or use less than lethal force. As the Eighth Circuit has held:

> [O]ur court has declined to second-guess whether alternative actions by police officers "might conceivably have been available. The Constitution . . . requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision." It may appear, in the calm aftermath, that an officer could have taken a different course, but we do not hold the police to such a demanding standard.

*Estate of Morgan*, 686 F.3d at 497 (citing *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993)).

Officer McLaughlan, Sergeant Ballard, and Officer Westrich were faced with a suspect that they believed was threatening police officers with a deadly weapon. When Al-Hakim pointed his gun at officers above him on the hill, Defendants McLaughlan, Ballard, and Westrich reasonably believed that they and their fellow officers were in danger of serious bodily harm or death, and they fired for protection. These are the circumstances the Eighth Circuit envisioned in declining to second-guess whether alternative actions "might conceivably have been available." Accordingly,

12

the Court grants summary judgment to Defendants McLaughlan, Ballard, and Westrich on Plaintiff's Claims 1, 3, and 4.

II. **The Court grants summary judgment to the City of Riverside, Missouri, Police Chief Gregory Mills, and the KCBOPC on Plaintiff's section 1983 claims under Counts 8, 10, 11, 16, and 17 because Officer McLaughlan's, Sergeant Ballard's, and Officer Westrich's use of deadly force did not violate Plaintiff's constitutional rights and were objectively reasonable under the circumstances.**

In Counts 8, 10, 11, 16, and 17, Plaintiff alleges that Defendants City of Riverside, Missouri, Police Chief Gregory Mills, and KCBOPC failed to exercise proper care in hiring, training, disciplining, and supervising Defendants McLaughlan, Ballard, and Westrich, thereby violating 42 U.S.C. § 1983.

Under certain circumstances, government officials may be liable for constitutional wrongs caused by their failure to train or supervise subordinates. Specifically, a supervisor may be liable if he directly participates in a constitutional violation or fails to properly train and supervise offending employees. *See Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996); *Boswell v. Sherburne Cnty.,* 849 F.2d 1117, 1122 (8th Cir. 1988). However, if those subordinates did not violate anyone's constitutional rights, then the claims against their superiors fail. *See Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) ("A vital element of any section 1983 claim is a showing that a right secured by the Constitution or federal law was violated. . . . No such showing having been made, the defendants named as supervisors must also be granted summary judgment.") (citation omitted); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

Because Officer McLaughlan, Sergeant Ballard, and Officer Westrich did not violate Al-

13

Hakim's constitutional rights, the Court grants summary judgment to the City of Riverside, Missouri, Police Chief Gregory Mills, and the KCBOPC on Plaintiff's section 1983 claims.

### III. The Court grants summary judgment to Officer McLaughlan, Sergeant Ballard, and Officer Westrich on Plaintiff's battery claims under Counts 21, 23, and 24 because they are vested with Official Immunity.

In Counts 21, 23, and 24, Plaintiff brings wrongful death claims against Defendants McLaughlan, Ballard, and Westrich under Mo Rev. Stat. § 537.080.

#### A. Officer McLaughlan's, Sergeant Ballard's and Officer Westrich's decision to use deadly force is a discretionary act, and, therefore, they are vested with Official Immunity.

"The doctrine of official immunity 'provides that public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions.'" *Estate of Morgan v. Cook*, No. 2:10-CV-041450-NKL, 2011 WL 3353892, at *7 (W.D. Mo. Aug. 3, 2011) (citing *Jackson v. City of Wentzville*, 844 S.W.2d 585, 586 (Mo. Ct. App. 1993)). "A discretionary act 'requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued.'" *Id*. (quoting *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008)). A police officer's decision to protect himself and others by using deadly force is "the product of his own judgment as a police officer." *Id*. at *8 (citing *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987) ("It is hard to imagine a setting more demanding of judgment than one in which line officers of the police department confront a person who has recently flourished a [weapon].")).

Officer McLaughlan, Sergeant Ballard, and Officer Westrich were acting within the scope of their authority to protect their fellow officers from harm. The evidence shows that they exercised their reason and discretion to use deadly force when Al-Hakim pointed his gun at them and their

14

fellow officers.  Accordingly, they are entitled to Official Immunity for these actions.  *Id.* (quoting *Bachmann v. Welby*, 860 S.W.2d 31, 33 (Mo. Ct. App. 1993) ("Official immunity exists because 'fear of personal liability should not hang over public officials as they make judgments affecting the public safety and welfare.'")).

## Conclusion

For the foregoing reasons, the Court grants Defendants' motions for summary judgment (Docs. 164, 165, 171).  Defendants' motions to exclude testimony of Plaintiff's purported experts (Docs. 167-170) are denied as moot.

**IT IS SO ORDERED.**

Dated:  August 2, 2013                                           /s/ Greg Kays
                                                                                GREG KAYS, JUDGE
                                                                                UNITED STATES DISTRICT COURT